IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID F. GOULD, III ESQUIRE | : : : | CIVIL ACTION |
| v. | : : : | |
| COUNCIL OF BRISTOL BOROUGH, et al. | : | No. 13-4016 |

**MEMORANDUM**

L. Felipe Restrepo, J.                                                        January 27, 2014

      David F. Gould III, Esq. brings this case against two municipal entities and their lawyers pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988. He alleges that the Borough of Bristol intentionally misapplied its zoning law, over the course of several years, to prevent him from developing his property, and then committed fraud on the court in his subsequent state-court appeals. He claims that the defendants – the Council of Bristol Borough ("Council"), its lawyer William Salerno, the Bristol Borough Zoning Hearing Board ("the Board") and its lawyer Barbara Kirk – violated a number of his federal constitutional rights, conspired to violate those rights, conspired to obstruct justice, and failed to prevent the obstruction of justice. The defendants have moved to dismiss Gould's Complaint. For the reasons that follow, I will grant the motion.

**I. BACKGROUND**

      The relevant events, as alleged by the Complaint, are as follows: Approximately eight years ago, Gould purchased a dilapidated piece of property ("the Property") in Bristol Borough's troubled town center. Compl. ¶¶ 14-19, 23, 26. The property is 3,192 square feet in total, and consists of three stone row homes of historic vintage. *Id.* ¶¶ 16-19. Prior to his purchase, the

1

Borough had commenced proceedings to condemn the Property as blighted. *Id.* ¶ 33. Soon after his purchase, the Borough initiated an eminent domain action in the Bucks County Court of Common Pleas; Gould filed preliminary objections and prevailed. *Id.* ¶ 36. He hoped to redevelop the Property, but he and Bristol Borough have been battling over his plans to do so ever since. *Id. passim.* In general, Gould alleges that the defendants wish to obtain and redevelop the property themselves, and so have acted to thwart his plans at every step, without basis in law or reason and at great cost to Gould.

At the outset, Gould planned to rehabilitate the Property as a residential unit, but the Council took the position that the Borough's Zoning Code prohibited a purely residential use. *Id.* ¶¶ 26-32. Gould alleges that this was incorrect, because the Property "enjoyed nonconforming rights." *Id.* ¶ 28. He "initiated several meetings with Borough authorities" to attempt to develop a viable redevelopment plan, but "the only action which they would countenance was to demolish the Building" – which the Borough also sought to accomplish through eminent domain. *Id.* ¶ 32-34. Meanwhile, the eminent domain action "deprived [Gould] of the use of the Property" from May of 2007 through August of 2008.

When the eminent domain proceeding ended, the Borough issued an inspection report finding the Property to be unsafe. *Id.* ¶ 37. It conflicted with an engineering report that Gould had obtained the year before. *Id.* ¶ 38. Gould obtained a second engineering report, and then undertook to develop a satisfactory remediation plan in collaboration with the Borough. *Id.* ¶ 39-40. While he was "waiting response back from Borough Engineers on his proposal," the Borough issued him a citation and $1000 fine for failure to repair or demolish the building. *Id.* ¶¶ 37-46. "Ultimately agreement on the action plan was reached, and the Plaintiff had it performed," making "substantial improvements to the appearance of the Building" as well. *Id.* ¶

42. The Borough, however, issued another inspection report finding the building to be unsafe, "which led to process under the Construction Code, and ultimately to a pending appeal by [Gould] in the Court of Common Pleas." *Id.* ¶ 45.

Finally, because the Borough had amended its Zoning Code to provide for mixed-use development in the town center, Gould devised a plan to develop his property as a mixed-use unit. *Id.* ¶¶ 46-50. The Council's lawyer (Salerno) and the Borough Manager both approved. *Id.* ¶¶ 51-52. The new plan required minor zoning variances related to parking, which Gould sought through a series of hearings before the Zoning Board. *Id.* ¶¶ 53-64. According to Gould's allegations, the proposed variances were minor, reasonable, and were actually required under "the prevailing law." *Id.* ¶¶ 53-58. Gould furthermore "indicated his amenability to compromise." *Id.* ¶ 60. The only objection to Gould's plan was raised by the Borough fire department at the final hearing; Gould contends that it lacked merit. *Id.* ¶¶ 61-64.

On February 17, 2010, the Board denied the variances. *Id.* ¶ 65. Gould alleges that the Board "had absolutely no legal or proper grounds for denial," *id.* at ¶ 66, and that the Board's opinion included egregious misstatements of the Borough's zoning law. *Id.* ¶¶ 69-77. "[T]he Opinion as a whole . . . was a fraudulent representation that the Borough and Zoning Board, had grounds to deny when no such grounds existed." *Id.* ¶ 76.

Gould appealed the decision. *Id.* ¶ 78. The Bucks County Court of Common Pleas did not respond to the sequence of motions and briefs that he filed, but responded immediately to the defendants' motion. *Id.* ¶¶ 79-84. In the court proceeding, the defendants maintained the legal positions expressed in the Board's decision. *Id.* ¶¶ 85-89. The Court did not endorse the Board's reasoning, but relied on a "new rationale not articulated by the Defendants" to deny Gould's suit. *Id.* ¶¶ 90-95. Gould alleges that the Court's holding was premised on a

3

misinterpretation of the Borough's zoning law.  *Id.*   He asked the defendants to correct the Court's misunderstanding, but they refused.  *Id.* ¶ 96.  On appeal, the Commonwealth adopted the lower court's "findings and reasoning."  *Id.* ¶ 98.  The Pennsylvania Supreme Court denied his petition for allowance of appeal on July 8, 2012.  *Id.* ¶ 99.

Gould then filed his Complaint in this lawsuit.  Count I seeks relief pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivations of procedural due process, substantive due process and equal protection, and for a taking without just compensation.  Count II alleges that the defendants conspired to violate his constitutional rights, and are liable pursuant to 42 U.S.C. § 1983.  Count III alleges that the defendants conspired to obstruct justice, and are liable pursuant to 42 U.S.C. § 1985(2).  Count IV seeks relief pursuant to 42 U.S.C. § 1986 for the defendants' alleged failure to prevent the obstruction of justice.

The defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) the applicable statutes of limitations bar Gould's claims; (2) the *Rooker-Feldman* doctrine divests this Court of subject-matter jurisdiction; (3) collateral estoppel precludes this Court's consideration of Gould's claims; and (4) Gould has failed to state any claim.

## II.   JURISDICTION

As a general matter, this Court has subject-matter jurisdiction over Gould's federal claims pursuant to 28 U.S.C. § 1331.  The defendants, however, argue that Gould's claims amount to an appeal of the state-court judgment, which this Court lacks authority to hear.  *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010) ("*Rooker* and *Feldman* established the principle that federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments.") (referring to *Rooker v. Fidelity*

*Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).  Gould answers that the state-court judgment is not the subject of his claims.  Rather, the gravamen of his suit is that the defendants (1) pursued a course of illegal conduct over several years in order to deprive him of his property, and (2) committed fraud upon the Pennsylvania courts by defending the Zoning Board's "fraudulent" decision.

The *Rooker-Feldman* doctrine applies only if, *inter alia,* the plaintiff "complain[s] of injuries caused by [the] state-court judgments" and "the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co.*, 615 F.3d at 166.  "[W]hen the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Id.* at 167.  In this case, Gould complains of injuries caused by the defendants.  The *Rooker-Feldman* doctrine therefore does not apply. *See id.* at 168 (explaining why doctrine did not apply to claim of fraud and misrepresentation in state-court proceedings); *id.* at 171-74 (holding that doctrine did not apply to claim that state-court proceedings were corruptly "engineer[ed]").  The defendants' argument – that Gould's allegations amount to nothing more than substantive disagreement with the state-court judgments – is really an argument that his Complaint has failed to state the claims he asserts.  The Court's jurisdiction, however, is proper.[1]

### III.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

---

[1] This is not to hold that Gould would be entitled to the injunctive relief he seeks (in addition to damages) if he were to prevail.  To order that relief might constitute, in effect, a rejection of the state-court judgment.  I need not resolve that question at present.  I will also forego discussion of issue preclusion, since it is not necessary to decide the defendants' motion.

5

556 U.S. 662, 678 (2009).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  To decide a motion to dismiss, a court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

IV.  DISCUSSION

    A.  Statute of Limitations

The defendants contend that the applicable statutes of limitations bar each of Gould's claims.  "A statute of limitations defense is an affirmative one, and in order to undergird a dismissal, must appear on the face of the complaint."  *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 403 n.14 (3d Cir. 2006).  The parties here agree that Gould's § 1983 and § 1985 claims are governed by a two-year statute of limitations. *See Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 79 (3d Cir. 1989); *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006); 42 Pa. Const. Stat. Ann. § 5524.  His § 1986 claim is subject to a one-year bar.  *See* 42 U.S.C. § 1986.  Gould's causes of action accrued when he "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

Gould filed his Complaint on July 8, 2013.  Nearly all of the events that it chronicles happened more than two years before, outside both limitations periods.  By July 8, 2011, the

Court of Common Pleas had affirmed the Board's zoning denial, Gould had appealed to the Commonwealth Court, and the Board had filed its brief.[2] On a straightforward application of the statutes of limitations, none of these events – or any prior – would be actionable. Gould argues, however, that he has pled a "continuing violation," which continued as long as the defendants defended his state-court appeal, or until the Pennsylvania Supreme Court denied allocatur on July 8, 2012.

The "continuing violations" doctrine applies to claims "based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant." *O'Connor*, 440 F.3d at 128. "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful . . . practice and that at least one act falls within the applicable limitations period." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013).[3] The problem here is that Gould has not alleged any act by the defendants within the applicable limitations period. The only events after July 8, 2011 were the Commonwealth Court's denial of Gould's appeal and the Pennsylvania Supreme Court's denial of allocatur. Gould contends, nevertheless, that the defendants' omissions during this period constitute a qualifying act. According to Gould, their failure to correct the fraud they had allegedly perpetrated on the court is sufficient to trigger the continuing violation doctrine.

Third Circuit law holds otherwise. "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation," and "[t]he focus of the . . . doctrine is on affirmative acts of the defendants." *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d

---

[2] These are matters of public record, which this Court may properly consider to adjudicate a motion to dismiss. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

[3] *Mandel* clarified the continuing violation doctrine in the employment context after *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Given that *Morgan* applies to civil rights claims as well, *see O'Connor*, 440 F.3d at 129, *Mandel*'s clarifications should apply here.

Cir. 2001) (citation omitted).[4]  In *Cowell*, the plaintiffs argued that two municipal liens imposed on their property, allegedly in violation of substantive due process, represented a continuing violation "until they were either lifted or expunged." *Id.* at 293.  The Third Circuit rejected that position:  "The mere existence of the liens does not amount to a continuing violation.  Neither was the Township's refusal to remove the lien an affirmative act of a continuing violation." *Id.*

A few years later, in *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415 (3d Cir. 2005), the Third Circuit found *Cowell*'s reasoning "equally applicable to claims arising from a trust relationship." *Id.* at 423.  The District Court had held that the alleged breach of fiduciary duty was a continuing violation so long as the fiduciary remained in breach.  The Third Circuit reversed.  It held that the relevant injury had occurred, and the limitations clock had begun ticking, as soon as the plaintiffs knew that the breach had occurred. *Id.*

Finally, in *Mumma v. High-Spec, Inc.*, 400 Fed. App'x 629, 632 (3d Cir. 2010) – which is non-precedential, but which the Court finds instructive – a Third Circuit panel rejected the argument that the defendants' fraud on the court (in that case, a forgery) resulted in a continuing violation.  The panel agreed with the District Court that later court proceedings, in which the fraud continued to figure, were "not 'a new violation' but instead a 'perpetuation of the original violation of due process.'" *Id.* at 632 (citing *Mumma v. High–Spec, Inc.*, No. 09-1447, 2009 WL 4723258, at *7 (M.D. Pa. 2009)).

As these cases illustrate, the (alleged) continuing infringement of a plaintiff's rights does not, on its own, constitute a "continuing violation."  For the doctrine to apply, at least one of the acts constituting the plaintiff's injury must have occurred within the limitations period.  A

---

[4] While *Morgan* may abrogate *Cowell*'s three-factor test for determining whether a defendant's conduct constitutes a continuous practice, *see Mandel*, 706 F.3d at 165-66; *Cowell*, 263 F.3d at 292, it does not appear to affect *Cowell*'s insistence on "continual unlawful acts" rather than "continual ill effects." *Id.* at 293.

defendant's failure to mitigate a prior violation does not qualify as an "act" that extends the violation.

Gould has alleged no act within the limitations periods that demonstrates a "continuing violation." Presuming that his allegations could support any claim pursuant to 42 U.S.C. §§ 1983, 1985 or 1986, the injury would have been complete at the time the defendants opted to defend the "fraudulent" zoning decision before the Bucks County Court of Common Pleas. By that point, all of the affirmative acts that Gould identifies as constitutional violations had occurred, Gould was on notice, and the limitations clock began ticking. The limitations periods were not tolled, as Gould appears to suggest, by a requirement to "exhaust state remedies." Pl.'s Reply (Doc. 17) at 4 n.1. As he himself has insisted, Gould's constitutional claims in this case are entirely independent of his claims in the state-court appeal of the Board's decision. There was thus no "exhaustion" requirement for his federal claims once the Board's decision was final, and he could have filed this federal action while the state proceeding was ongoing. *Cf. Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292 (3d Cir. 1993) (noting that constitutional challenges to local land-use decisions are ripe once local authorities have made a final decision).

Because Gould has alleged no affirmative act by the defendants within either of the applicable limitations periods, he has not pled a timely claim for a "continuing violation." His claims are premised exclusively on actions outside the limitations period, and so are time-barred.

### B. Failure to State a Claim

In addition, Gould has failed to allege facts sufficient to state any of the claims he asserts.

*1. Count I: § 1983 (Due Process, Equal Protection, and Takings)*

Count I of Gould's Complaint seeks relief pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivations of procedural due process, substantive due process and equal protection, and for a taking without just compensation.

To state a § 1983 claim for a deprivation of procedural due process, a plaintiff must allege that he was deprived of a protected liberty or property interest and that "the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citation omitted). "[W]hen a state 'affords a full judicial mechanism with which to challenge the administrative decision' in question, the state provides adequate procedural due process." *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir.1995) (quoting *Midnight Sessions, Ltd. v. City of Phila.*, 945 F.2d 667, 682 (3d Cir. 1991)), abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003).

Gould's Complaint narrates his appeal of the Board's zoning decision through Pennsylvania's state-court system. He has not alleged any deprivation of that judicial process. He argues, instead, that the Board's "fraud" corrupted the process. Assuming *arguendo* that a fraud on the court could constitute a deprivation of procedural due process, Gould's allegations are not sufficient to suggest such a fraud, which is limited to "egregious misconduct ... such as bribery of a judge or jury or fabrication of evidence by counsel." *Herring v. United States*, 424 F.3d 384, 390 (3d Cir. 2005) (quoting *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir. 1976)). The only "fraud" that Gould has alleged is the purportedly incorrect legal conclusion that the Board reached in its zoning denial, and subsequently defended in state court.

Nor has Gould alleged a violation of substantive due process. To state a substantive due process claim on the basis of a local zoning dispute, a plaintiff must allege behavior that "shocks the conscience." *United Artists Theatre Circuit, Inc.*, 316 F.3d at 400-03. "The 'shocks the conscience' standard encompasses only the most egregious official conduct." *Id.* at 400 (citation omitted). Even a bad faith violation of state law may not qualify, and an error of law clearly falls short. *See id.* at 402 (citing, as examples, *Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104-05 (8th Cir. 1992) and *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 32 (1st Cir. 1991)). The facts alleged in Gould's complaint suggest, at the very most, that local zoning authorities exerted special effort, and intentionally misapplied Bristol Borough's zoning law, to prevent Gould from developing his property as he wished. This does not rise to the level of a constitutional violation. *Cf. Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 284-86 (3d Cir. 2004) (noting that the "shocks the conscience" test "is designed to avoid converting federal courts into super zoning tribunals," and rejecting a substantive due process claim based on similar allegations).

As for equal protection, to state a claim for violation of the Equal Protection Clause as a "class of one," a plaintiff must allege facts suggesting "that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Hill*, 455 F.3d at 239 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Gould has not alleged the existence of similarly situated individuals – owners of similar lots near Bristol town center who sought to pursue similar redevelopment plans – or any facts that, accepted as true, would support a finding of differential treatment.

Finally, Gould's claim for violation of the Takings Clause is not ripe, because "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim

11

a violation of the [Takings] Clause until it has used the procedure and been denied just compensation." *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001). "Pennsylvania's Eminent Domain Code provides inverse condemnation procedures through which a landowner may seek just compensation for the taking of property." *Id.*; *see also* 26 Pa. Cons. Stat. Ann. §§ 101-1106. Gould cannot state a Takings Claim unless and until he has pursued that remedy.

### *2. Counts II, III & IV (§§ 1983, 1985(2), 1986)*

Count II seeks relief pursuant to 42 U.S.C. § 1983 for the defendants' alleged conspiracy to violate Gould's constitutional rights. "In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). To state a conspiracy claim, a plaintiff must allege "facts that plausibly suggest a meeting of the minds." *Great W. Mining & Mineral Co.,* 615 F.3d at 179. A "conclusory allegation of agreement at some unidentified point" is not adequate. *Twombly,* 550 U.S. at 557. Furthermore, "a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right," since there is otherwise no liability under that provision. *Perano v. Twp. Of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011). Because Gould has neither stated a claim for an underlying constitutional deprivation nor pled facts that plausibly suggest an agreement, he has failed to state a § 1983 conspiracy claim.

Count III alleges that the defendants conspired to obstruct justice, and are liable pursuant to 42 U.S.C. § 1985(2). Presumably Gould's claim is premised on the second half of § 1985(2), which "guards against those obstructions of justice 'in any State or Territory' which have as their objects the denial of the equal protection of the laws." *Brawer v. Horowitz*, 535 F.2d 830, 840

(3d Cir. 1976).[5]  To state a claim under the latter part of § 1985(2), a plaintiff must allege both facts sufficient to suggest a conspiracy and a "class-based, invidiously discriminatory animus."  *Id.*  For the same reasons that Gould's allegations are inadequate to state a § 1983 conspiracy or equal protection violation, they do not state a § 1985(2) conspiracy claim.

Count IV, finally, seeks relief pursuant to 42 U.S.C. § 1986 for the defendants' alleged failure to prevent the obstruction of justice.  "Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985," Gould's § 1986 claim "necessarily must fail also."  *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980).

### C. *Leave to Amend*

Gould requests that the Court grant him leave to amend his Complaint to cure the legal deficiencies.  "[A] district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Great W. Mining & Mineral Co.,* 615 F.3d at 174.  Nothing in Gould's Complaint or briefing suggests that any facts exist that would be sufficient to state a constitutional claim, let alone in the form of a continuing violation.  Nevertheless, the Court will grant Gould leave to amend within thirty days of this decision.  Any amended complaint that he does file must (1) allege factual events sufficient to "show" his entitlement to relief according to one or more of the standards canvassed above, *Fowler*, 578 F.3d at 210-11; and (2) allege acts by the defendants within the applicable limitations periods that demonstrate a continuing violation.

## V. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted and Gould's Complaint is dismissed.  He may file an amended complaint within thirty days.  An implementing order follows.

---

[5] "The first half of § 1985(2) aims at conspiracies the object of which is intimidation of or retaliation against parties or witnesses, or grand or petit jurors, in any court of the United States." *Brawer*, 535 F.2d at 840.  It is clearly inapplicable.